UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| ALFONSO ROBERTO GAFARRETTE CARTAGENA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTERPOINT NINE, INC., <br><br> Defendant. | Civil Action No. 13-1071 (JDB) |

## MEMORANDUM OPINION

Plaintiffs Alfonso Roberto Gafarrette Cartagena ("Cartagena") and Noe Humberto Leiba ("Leiba") bring this action against their former employer, defendant Centerpoint Nine, Inc. ("Centerpoint"), seeking unpaid overtime wages and statutory damages under the Fair Labor Standards Act of 1938 ("FLSA") and the D.C. Minimum Wage Act Revision Act of 1992 ("DCMWA"). Now before the Court is [15] Centerpoint's motion to compel discovery and partial motion to dismiss, filed after a dispute arose when Centerpoint sought discovery from both plaintiffs regarding their immigration status. Leiba opposed the discovery requests; Cartagena did not respond. Accordingly, Centerpoint seeks an order compelling discovery against plaintiff Leiba, and dismissing all of plaintiff Cartagena's claims. For the reasons set forth below, the Court will grant the motion to compel and deny the motion to dismiss.

## BACKGROUND

Plaintiff Cartagena filed this action on July 12, 2013, naming Centerpoint as the only defendant. See Compl. [ECF No. 1]. Cartagena, then represented by Mr. Gregg C. Greenberg of The Zipin Law Firm, LLC, sought statutory damages under the FLSA and unpaid overtime

wages under the DCMWA. Id. at 1. Cartagena alleged that he worked for Centerpoint (as a dishwasher and a food preparer) for about 99 weeks, for 60 hours per week, at a flat rate of $375 per week ($6.25 per hour). Id. ¶¶ 9-11. Centerpoint denied these allegations. See Answer [ECF No. 7] ¶¶ 9-11.

An amended complaint was filed, with the only change being the addition of plaintiff Leiba (also represented by Mr. Greenberg). See Am. Compl. [ECF No. 9]. Leiba alleged that he had worked for Centerpoint (also as a dishwasher and a food preparer) for 25 weeks, for 60 hours per week, at a flat rate of $450 per week ($7.50 per hour). Id. ¶¶ 19-21. Centerpoint filed an amended answer, and once again denied these allegations. See Answer to Am. Compl. [ECF No. 10] ¶¶ 19-21.

Discovery began on October 18, 2013, and is currently ongoing. See Oct. 18, 2013 Scheduling Order [ECF No. 12]. The first hiccup came on December 5, 2013, when Mr. Greenberg filed a consent motion to withdraw as counsel for his original client, Cartagena. See Mot. to Withdraw [ECF No. 13]. Mr. Greenberg explained that a "serious and irreparable rift has developed" between him and plaintiff Cartagena, and that "communication difficulties" between the two of them "made it impossible for [Greenberg] to represent [Cartagena] effectively and ethically." Id. ¶ 1. Mr. Greenberg made clear that he wished to continue representing plaintiff Leiba. Id. at 1 n.1.

Upon consideration of Cartagena's apparent non-responsiveness to his attorney's communications, Mr. Greenberg's desire to withdraw, and Centerpoint's consent, the Court granted the motion to withdraw. See Dec. 5, 2013 Order [ECF No. 14]. The Court ordered Cartagena to "file a notice with the Court by not later than January 3, 2014, confirming either that new counsel has been obtained or that he intends to proceed pro se." Id. The Clerk of the

Court mailed a copy of this Order to plaintiff Cartagena at his last known address. See id. Cartagena never filed the requested notice or communicated with the Court in any way, and no attorney has entered an appearance on his behalf since Mr. Greenberg's withdrawal. And according to counsel for Leiba and Centerpoint, Cartagena is nowhere to be found, and has not responded to any discovery requests.

Meanwhile, on December 13, 2013, counsel for Leiba and Centerpoint called chambers to discuss a discovery dispute, consistent with the Court's instruction for handling such matters. See Oct. 18, 2013 Scheduling Order. Specifically, Leiba had objected to discovery requests regarding his immigration status and whether he had legal authorization to work in the United States. Pursuant to the Court's instructions, Centerpoint filed a motion to compel discovery, and the parties—or, to be precise, Leiba and Centerpoint—briefed the issue. The motion to compel is now fully briefed and ripe for resolution.

Centerpoint also filed a motion to dismiss all claims of plaintiff Cartagena, for failure to prosecute and failure to respond to discovery requests. Centerpoint mailed a copy of the motion to Cartagena's last known address. Cartagena filed no response.

## LEGAL STANDARDS

**A. Motion to Compel**

"The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery." In re England, 375 F.3d 1169, 1177 (D.C. Cir. 2004). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." To be relevant for discovery purposes, "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Put differently, "a party may discover

information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case." Smith v. Schlesinger, 513 F.2d 462, 473 (D.C. Cir. 1975) (citations omitted).[1] The term "relevant" thus has a different meaning—and a broader scope—under Rule 26(b) than it does under Rule 401 of the Federal Rules of Evidence. See, e.g., Hodgdon v. Northwestern Univ., 245 F.R.D. 337, 341 (N.D. Ill. May 29, 2007); Lineen v. Metcalf & Eddy, Inc., No. 96-2718, 1997 WL 73763, at *1 (S.D.N.Y. Feb. 21, 1997); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 8 Federal Practice & Procedure § 2008 (3d ed.). When a request for discovery is propounded, the party opposing the request should lodge a timely objection. The party moving to compel production of documents bears the initial burden of explaining how the requested information is relevant. See Bethea v. Comcast, 218 F.R.D. 328, 329 (D.D.C. 2003). Once that showing is made, however, the burden shifts to the objecting party to explain why discovery should not be permitted. See Doe v. District of Columbia, 231 F.R.D. 27, 30 (D.D.C. 2005); Alexander v. FBI, 192 F.R.D. 50, 53 (D.D.C. 2000).

### B. Failure to Prosecute

Local Civil Rule 83.23 provides that "[a] dismissal for failure to prosecute may be ordered by the Court upon motion by an adverse party, or upon the Court's own motion." This rule "essentially embodies the standard of Rule 41(b) of the Federal Rules of Civil Procedure, which allows a district court to dismiss an action for failure to prosecute." Smith-Bey v. Cripe, 852 F.2d 592, 593 (D.C. Cir. 1988); see also Fed. R. Civ. P. 41(b) ("For failure of the plaintiff to

---

[1] Smith was decided before the 2000 amendments to Rule 26(b). Those amendments, however, did "not effect a dramatic change in the scope of discovery." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2008, at 35 (2d ed. Supp. 2007). The standards announced in earlier cases therefore remain instructive, and those cases continue to be cited frequently. See, e.g., Estate of Klieman v. Palestinian Auth., 293 F.R.D. 235, 243 (D.D.C. 2013) (citing Smith); Jewish War Veterans of the U.S. of Am., Inc. v. Gates, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) (same).

prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."). "A lengthy period of inactivity may also be enough to justify dismissal under Rule 41(b)." Smith-Bey, 852 F.2d at 593. "This is particularly true if the plaintiff . . . previously had been warned by the court that he or she must act with greater diligence, . . . has presented no legitimate excuse for the delay, or if there are other factors aggravating the offending party's inaction." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 9 Federal Practice & Procedure § 2370 (3d ed.). Finally, "[b]ecause disposition of claims on the merits is favored, the harsh sanction of dismissal for failure to prosecute is ordinarily limited to cases involving egregious conduct by particularly dilatory plaintiffs, after 'less dire alternatives' have been tried without success." Peterson v. Archstone Communities LLC, 637 F.3d 416, 418 (D.C. Cir. 2011) (alterations omitted) (quoting Noble v. USPS, 71 F. App'x 69, 69 (D.C. Cir. 2003)).

**DISCUSSION**

**I. Motion to Compel Discovery**

As initially presented at the December 13, 2013 telephone conference, this discovery dispute seemed likely to require this Court to wade into a highly charged policy debate that is currently working its way through the federal courts, one discovery ruling at a time. Courts have struggled to reconcile the broad discovery contemplated by the Federal Rules of Civil Procedure (which would seemingly allow discovery regarding a plaintiff's immigration status if the request has some legitimate, non-harassing purpose) with the importance of avoiding a chilling effect on the minimum wage and overtime claims of undocumented immigrant workers (who are covered by many federal and state labor and employment statutes). But in the end, this motion can be

resolved by the application of conventional standards of relevance and admissibility under the Federal Rules, avoiding the need to wade into this morass.

The parties' briefing focuses heavily on Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), in which the Supreme Court held that federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986, foreclosed the NLRB from awarding back pay to an undocumented immigrant who had never been legally authorized to work in the United States. Centerpoint makes some broad arguments, but ultimately stops short of arguing that Hoffman prevents undocumented immigrants from recovering damages under the FLSA or the DCMWA. See Def.'s Mot. [ECF No. 15] at 5; see also Agri Processor Co., Inc. v. NLRB, 514 F.3d 1, 5-6 (D.C. Cir. 2008) (holding that, notwithstanding Hoffman, undocumented immigrants still qualify as "employees" under the National Labor Relations Act, and citing with approval Patel v. Quality Inn S., 846 F.2d 700, 704-05 (11th Cir. 1988), which issued a similar holding with respect to the FLSA). In response, Leiba knocks down a straw man, citing cases in which courts have found undocumented immigrants to be protected under federal employment laws, and have held that fishing expeditions into a plaintiff's immigration status for vague "credibility" inquiries are generally impermissible—or, at least, that such evidence is inadmissible at trial under Rule 403. See Leiba's Opp'n [ECF No. 16] at 4-7 ("Any probative value as to Plaintiff's credibility is absolutely outweighed by the prejudicial result of such documents and testimony.").

But Leiba ignores Centerpoint's simplest, most compelling argument: Leiba's immigration status is highly relevant to a factual dispute at the heart of this case, wholly separate from any generalized "credibility" issues that may or may not be raised by Leiba's immigration history. Specifically, Centerpoint "contends that plaintiff Leiba only worked four and a half

6

days, which included no overtime, and stopped coming to work because defendant insisted that he provide the appropriate documentation showing he is entitled to work in the United States (after plaintiff had repeatedly given excuses for having not done so)." Def.'s Mot. at 6. Of course, Leiba alleges that he worked many weeks of unpaid overtime. See Am. Compl. ¶¶ 19-21. Resolving this factual dispute will be critical to resolving this case, and is relevant both to the issues of liability (i.e., whether Leiba actually worked uncompensated overtime shifts) and damages (i.e., if Leiba did work uncompensated overtime shifts, how many). If, in fact, Leiba is an undocumented immigrant who lied to his employer about his immigration status, that will tend to support Centerpoint's version of events, making Centerpoint's argument that Leiba quit after four days following Centerpoint's request for immigration documents much more plausible. See Def.'s Mot. at 6 ("The fact that Leiba was not legally permitted to work in the United States corroborates defendant's statement that Leiba quit because he was asked to demonstrate that he was legally authorized to work."). On the other hand, if Leiba is legally permitted to work in the United States, Centerpoint's version of events would seem to be highly implausible. So discovery regarding Leiba's immigration status (and what he told his employer about it) will surely "have some probable effect on the organization and presentation of the moving party's case." Smith, 513 F.2d at 473. Hence, such information is relevant and discoverable under Rule 26.[2]

Leiba may be right that the probative value of such evidence is outweighed by the possibility of unfair prejudice under Rule 403, though the Court does not opine on that issue. That is the standard for admissibility at trial, not for the scope of permissible discovery. What

---

[2] In so holding, the Court neither accepts nor rejects Centerpoint's broader argument that submitting false immigration documents is generally probative of a plaintiff's credibility, and is therefore relevant on that basis alone. The Court's holding here is far narrower, and based solely on the facts and circumstances of this case, in which immigration status happens to touch on an important factual dispute.

decides this motion is that the proposed discovery is "relevant to any party's claim or defense," and "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Whether such evidence is actually admissible is a question for another day.[3] See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 8 Federal Practice & Procedure § 2008 (3d ed.) ("Questions of admissibility are best left until trial.").

**II. Motion to Dismiss For Failure to Prosecute**

The Court will deny Centerpoint's motion to dismiss all claims of plaintiff Cartagena. To be sure, Cartagena's "lengthy period of inactivity" might "justify dismissal under Rule 41(b)" for failure to prosecute. Smith-Bey, 852 F.2d at 593. Likewise, the Court could theoretically dismiss all of Cartagena's claims as a discovery sanction under Rule 37(b)(2), for failure to respond to Centerpoint's interrogatories. See Butera v. District of Columbia, 235 F.3d 637, 661 (D.C. Cir. 2001). But, in an exercise of discretion, the Court will not adopt the "harsh sanction of dismissal" just yet, because doing so is not appropriate until "'less dire alternatives' have been tried without success." Peterson, 637 F.3d at 416 (quoting Noble, 71 F. App'x at 69). Cartagena has missed one court-ordered deadline, and has apparently not responded to any discovery requests. This is troubling, but not (yet) such an egregious abuse of the adversary process to warrant dismissal. Accordingly, the Court will order Cartagena to show cause, by not later than April 1, 2014, why his claims should not be dismissed because of his non-responsiveness. If Cartagena does not comply with this order, the Court will dismiss his claims.

---

[3] The Court assumes that Centerpoint's discovery requests are made entirely in good faith, for the purpose of developing a factual record to support one of its defenses—specifically, that Leiba quit as soon as he was pressed on his immigration status. Should any hint arise during discovery to credit Leiba's (currently unsupported) assertion that Centerpoint's discovery requests are really just "a tool to harass and intimidate," Leiba's Opp'n at 2, that would substantially alter the Court's analysis. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 n.17 (1978) ("[D]iscovery should be denied when a party's aim is to . . . embarrass or harass the person from whom he seeks discovery.").

8

## **CONCLUSION**

For the reasons set forth above, the Court will grant Centerpoint's motion to compel discovery, and deny Centerpoint's motion to dismiss. A separate order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: March 13, 2014